# EXHIBIT "1"

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Edward C. Walton 78490<br>Procopio, Cory, Hargreaves & Savitch, LLP<br>525 B Street, Suite 2200<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-238-1900       FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff Littrell Properties, LP | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**05/03/2018** at 03:55:52 PM<br><br>Clerk of the Superior Court<br>By Chelsea Martinez, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Diego**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

CASE NAME:

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER:<br>37-2018-00022168-CU-BC-CTL |
|---|---|---|---|
| ☒ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Gregory W Pollack<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve                   in other counties, states, or countries; or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is   ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: May 3, 2018
Edward C. Walton
_____                                 _____
(TYPE OR PRINT NAME)                                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3.740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
 Medical Malpractice–
  Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
 Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment (*non-domestic relations*)
 Sister State Judgment
 Administrative Agency Award (*not unpaid taxes*)
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
 Declaratory Relief Only
 Injunctive Relief Only (*non-harassment*)
 Mechanics Lien
 Other Commercial Complaint Case (*non-tort/non-complex*)
 Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

5

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7071 |

PLAINTIFF(S) / PETITIONER(S):    Littrell Properties LP

DEFENDANT(S) / RESPONDENT(S):  Healthstream Inc   .

LITTRELL PROPERTIES LP VS HEALTHSTREAM INC [IMAGED]

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: |
|---|---|
| and CASE MANAGEMENT CONFERENCE | 37-2018-00022168-CU-BC-CTL |

## CASE ASSIGNMENT

Judge:  Gregory W Pollack                              Department: C-71

## COMPLAINT/PETITION FILED: 05/03/2018

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 10/05/2018 | 01:30 pm | C-71 | Gregory W Pollack |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

SDSC CIV-721 (Rev. 01-17)                                                                                  Page: 1

**NOTICE OF CASE ASSIGNMENT**



Superior Court of California
County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.

This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2018-00022168-CU-BC-CTL      CASE TITLE: Littrell Properties LP vs Healthstream Inc [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:

               (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
               (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
               (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

### Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

### Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): Littrell Properties LP |
|---|

| DEFENDANT(S): Healthstream Inc |
|---|

| SHORT TITLE: LITTRELL PROPERTIES LP VS HEALTHSTREAM INC [IMAGED] |
|---|

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2018-00022168-CU-BC-CTL |
|---|---|

Judge: Gregory W Pollack                                          Department: C-71

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                   ☐ Non-binding private arbitration

☐ Mediation (private)                           ☐ Binding private arbitration

☐ Voluntary settlement conference (private)     ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                  ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                                Date: _____

Name of Plaintiff                               Name of Defendant

Signature                                       Signature

Name of Plaintiff's Attorney                    Name of Defendant's Attorney

Signature                                       Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

IT IS SO ORDERED.

Dated: 05/04/2018                               JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)      STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION      Page: 1



CT SOP CUSTOMER SERVICE
2149323601
CT - MINNESOTA SOP TEAM
6815 SAUKVIEW DR
SAINT CLOUD  MN 56303

**1.0 LBS    LTR         1 OF 1**

SHIP TO:
    ROBERT  LAIRD
    6152484848
    HEALTHSTREAM, INC.
    209 10TH AVE., SOUTH, SUITE 450
    **NASHVILLE   TN 37203**

**TN 371 9-02**

**UPS NEXT DAY AIR**                    **1**
TRACKING #: 1Z Y04 116 01 9542 1032

BILLING: P/P
DESC: SOP Documents

Reference No.1: SOP/2401130/533312607/CT SOP Custo

XOL 18.03.09        NV45 99.0A 04/2018

**UPS Tracking # :** 1ZY041160195421032

**Created By :** Jagjeet Singh1

**Created On :** 05/10/2018 10:56 PM

**Recipient :**

**ROBERT LAIRD**

Title : --

Customer : HEALTHSTREAM, INC.

Address : 209 10TH AVE., SOUTH, SUITE 450

Email : noemail@wolterskluwer.com

Phone : 615-248-4848    Fax : 615-301-3200

**Package Type :** Envelope

**Items shipped :** 1

| Log # | Case # | Entity Name |
|-------|--------|-------------|
| 533312607 | 37201800022168CUBCCTL | HEALTHSTREAM, INC. |

12

## *NATIONAL REGISTERED AGENTS, INC.*

### *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: ROBERT LAIRD
HEALTHSTREAM, INC.
209 10TH AVE., SOUTH, SUITE 450
NASHVILLE, TN 37203

SOP Transmittal # 533312607

213-337-4615 - Telephone

Entity Served: HEALTHSTREAM, INC. (Domestic State: TENNESSEE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of CALIFORNIA on this 09 day of May, 2018. The following is a summary of the document(s) received:

1. **Title of Action:** LITTRELL PROPERTIES, LP, etc., Pltf. vs. HEALTHSTREAM, INC., etc., Dft.

2. **Document(s) Served:**   Other: Summons, Complaint, Exhibit(s)

3. **Court of Jurisdiction/Case Number:** San Diego County - Superior Court - San Diego, CA
Case # 37201800022168CUBCCTL

4. **Amount Claimed, if any:**  N/A

5. **Method of Service:**

   _X_ Personally served by:       _X_ Process Server         ___ Law Enforcement        ___ Deputy Sheriff        ___ U. S Marshall

   ___ Delivered Via:              ___ Certified Mail        ___ Regular Mail          ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:**   05/09/2018 01:00:00 PM CST

7. **Appearance/Answer Date:**  Within 30 calendar days after this summons and legal papers are served

8. **Received From:**     Edward C. Walton              **9. Carrier Airbill #** 1ZY041160195421032
Procopio, Cory, Hargreaves & Savitch, LLP
525 B Street, Suite 2200
San Diego, CA 92101                    **10. Call Made to:** Not required
619-238-1900

11. **Special Comments:**
SOP Papers with Transmittal, via UPS Next Day Air

**NATIONAL REGISTERED AGENTS, INC.**                    CopiesTo:

Transmitted by   Amanda Garcia

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HEALTHSTREAM, INC., a Tennesse corporation,

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/03/2018** at 03:55:52 PM

Clerk of the Superior Court
By Chelsea Martinez, Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LITTRELL PROPERTIES, LP, a California limited partnership

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Diego Superior Court<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>37-2018-00022168-CU-BC-CTL |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Edward C. Walton 78490 619-238-1900
Procopio, Cory, Hargreaves & Savitch, LLP
525 B Street, Suite 2200 San Diego, CA 92101

| DATE: 05/04/2018<br>*(Fecha)* | Clerk, by *C. Martinez*<br>*(Secretario)* **C. Martinez** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Healthstream, Inc., a Tennesce Corporation
    under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
    ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
    ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
    ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 5-9-18

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

1    Edward C. Walton (Bar No. 78490)
      PROCOPIO, CORY, HARGREAVES &
2      SAVITCH LLP
      525 B Street, Suite 2200
3    San Diego, CA 92101
      Telephone: 619.238.1900
4    Facsimile: 619.235.0398
      Email: ed.walton@procopio.com
5

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/03/2018** at 03:55:52 PM

Clerk of the Superior Court
By Chelsea Martinez, Deputy Clerk

6    Attorney for Plaintiff
      LITTRELL PROPERTIES, LP

7

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **COUNTY OF SAN DIEGO**

10    LITTRELL PROPERTIES, LP, a California
       limited partnership,
11

Case No. 37-2018-00022168-CU-BC-CTL

**COMPLAINT FOR:**

12             Plaintiff,

13    v.

14    HEALTHSTREAM, INC., a Tennessee
       corporation,

15             Defendant.

**(1) BREACH OF CONTRACT**
**(2) WASTE**
**(3) NEGLIGENT DESTRUCTION OF PROPERTY**
**(4) TRESPASS TO CHATTEL**
**(5) CONVERSION**

**JURY TRIAL DEMANDED**

16

17

18      Plaintiff Littrell Properties, LP ("Plaintiff") alleges as follows:

19                       <u>**PARTIES**</u>

20       1.      Plaintiff is, and at all relevant times mentioned in the Complaint was, a limited

21 partnership organized under the laws of the State of California with its principal place of business

22 in California.

23       2.      Defendant Healthstream, Inc. ("Defendant") is, and at all relevant times mentioned

24 in the Complaint was, a corporation incorporated under the laws of the State of Tennessee with its

25 principal place of business in Tennessee.  At all relevant times, Defendant conducted business in

26 the State of California, including in San Diego County.

27

28

COMPLAINT

1

**JURISDICTION AND VENUE**

2        3.       This Court has original jurisdiction over Plaintiff's claims because Plaintiff seeks
3    recovery of damages in excess of $25,000.  This Court has personal jurisdiction over Defendant
4    under C.C.P. § 410.10 because its acts and conduct relevant to the present action occurred
5    exclusively in San Diego County, California.

6        4.       Venue is proper in this Court under C.C.P. § 395(a) because the agreement at issue
7    was to be performed in San Diego County, California, and because any injury to Plaintiff and/or
8    Plaintiff's property occurred in San Diego County, California.  Venue is further proper in this
9    Court under C.C.P. § 392(a)(1)  because the real property at issue is located in San Diego County,
10   California and any damage to such real property occurred in San Diego County, California.

11

**GENERAL ALLEGATIONS**

12       5.       On March 16, 2015, Plaintiff and Defendant entered into a written lease agreement
13   (the "Lease Agreement"), a true copy of which is attached to this Complaint as Exhibit A and is
14   incorporated into the Complaint by reference.  Under the terms of the Lease Agreement, Defendant
15   agreed to lease from Plaintiff the premises consisting of approximately 1.06 acres of land in
16   Rancho Bernardo on Lot 50 in 4S Ranch and commonly known as 17085 Camino San Bernardo,
17   San Diego, CA 92127 (the "Property", collectively with the office building and related parking
18   areas, driveways and other improvements located thereon, the "Premises").  The commencement
19   date of the Lease Agreement was March 16, 2015 (the "Commencement Date"), after which
20   Defendant took occupancy of the Premises.  Plaintiff is the owner of the Premises and all
21   improvements and other property located thereon.

22       6.       The term of the Lease Agreement expired on March 31, 2018.  The parties did not
23   renew the Lease Agreement and did not reach a new agreement for the lease of the Premises.  Prior
24   to the expiration of the Lease Agreement, Defendant vacated the Premises.  Upon inspection
25   following Defendant's vacation of the Premises, it was obvious that Defendant engaged in
26   intentional and unauthorized conduct causing severe damage to the Premises.  Specifically, and on
27   information and belief, Plaintiff alleges that Defendant willfully and maliciously cut a number of
28   the wires constituting the low voltage wiring system throughout the building, rendering them and

the systems they service—including the computer, telephone, and environmental systems—completely non-operational. Defendant never sought and Plaintiff never provided authorization for Defendant's willful and malicious destruction of the wiring system. Defendant has provided Plaintiff no explanation or excuse for its conduct.

7.   The Premises have been rendered uninhabitable by virtue of Defendant's willful and malicious conduct. Plaintiff will lose the rental and/or sale value of the Premises unless and until all of the systems Defendant destroyed are fully repaired or replaced. Plaintiff will incur further damages if forced to pay for the repair or replacement of the wiring system out of pocket. Plaintiff believes that there may be additional aspects of the Premises which have been destroyed through Defendant's actions or neglect.

8.   Defendant's willful and malicious conduct (and, as discussed below, refusal to indemnify Plaintiff for the damage caused) is in clear violation of multiple provisions of the Lease Agreement. For example, paragraph 3 of the Lease Agreement requires that "Tenant shall not use or allow any portion of the Premises to be used for any improper, disreputable or objectionable purpose, nor shall Tenant cause or permit any nuisance or waste in, on or about the Premises." Further, "Tenant shall indemnify, defend and hold harmless Landlord from any and all costs, claims, losses, liabilities, damages, injuries, suits and causes of action arising out of or relating to any Tenant's actions or installations conducted on the Premises, including (without limitation) reasonable attorneys' fees."

9.   Paragraph 17 of the Lease Agreement requires that "Tenant shall not make or allow to be made any alterations or physical additions in or to the Premises, without first obtaining the written consent of Landlord[.]" Further, "Tenant shall indemnify and hold harmless Landlord from and against all costs (including attorneys' fees and costs of suit), claims, losses, liabilities, damages, injuries, suits and causes of action arising out of or relating to any alterations, additions or improvements made by Tenant to the Premises[.]"

10.   Paragraph 19 of the Lease Agreement requires that "[d]uring the Term of this Lease, Tenant shall maintain, repair and replace all portions of the Premises that are not the responsibility of Landlord pursuant to Section 18 above in good and clean condition, promptly making all

3
COMPLAINT

necessary repairs thereto (including, without limitation, ... all low voltage and audio/video wiring located therein), all in a manner consistent with first class office buildings located in San Diego, California[.]" Further, "[a]t the end of the Term of this Lease, Tenant shall return the Premises to Landlord in substantially the same condition as they were on the Commencement Date (but as altered or approved after such date in compliance with the requirements of this Lease), excepting only normal wear and tear, damage by casualty or condemnation, and construction, maintenance, repairs, and replacements required hereunder to be completed by Landlord."

11.      Paragraph 24 of the Lease Agreement requires Defendant to "indemnify, defend by counsel reasonably acceptable to Landlord and hold Landlord harmless of, from and against any and all losses, damages, liabilities, claims, liens, costs and expenses (including, but not limited to, court costs, reasonable attorneys' fees and litigation expenses) in connection with ... damage to or theft, loss or loss of use of any property occurring in or about the Premises arising in connection with Tenant's occupancy of the Premises, or the conduct of its business, or in connection with any activity, work, or thing done, permitted or suffered by Tenant in or about the Premises, or in connection with any breach or default on the part of the Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Lease, or due to any other act or omission or willful misconduct of Tenant or any of its agents, employees, contractors, assigns, subtenants, guests or invitees on or in connection with the Premises."

12.      Paragraph 37 of the Lease Agreement requires that "[u]pon termination of this Lease ... Tenant shall quit and surrender possession of the Premises to Landlord broom clean and in substantially the same condition as it existed on the Commencement Date (but as altered or improved after such date in compliance with the requirements of this Lease), excepting only normal wear and tear, damage by casualty or condemnation, and construction, maintenance, repairs, and replacements required hereunder to be completed by law." Further, "[b]efore surrendering possession of the Premises, Tenant shall, without expense to Landlord, remove all signs, furnishings, equipment, trade fixtures, merchandise and other personal property installed or placed in the Premises by Tenant and all debris and rubbish, and Tenant shall repair all damage to Premises resulting from such removal (as opposed to normal wear and tear)." Finally, "Tenant

4
COMPLAINT

1  shall pay Landlord on demand any and all expenses incurred by Landlord in the removal of such
2  items, including, without limitation, the cost of repairing any damage to Premises caused by such
3  removal ... together with an administrative fee equal to five percent (5%) of such aggregate costs."

4      13.    Defendant's willful and malicious conduct breached each of the above-referenced
5  provisions of the Lease Agreement at least.  Such conduct has caused substantial and permanent
6  damage to the Premises and the wiring system located thereon.

7      14.    On or about April 5, 2018, Edward C. Walton, outside counsel to Plaintiff, reached
8  out to Michael Collier, Esq. in Defendant's Legal Department, and D. Mark Sheets, Esq., outside
9  counsel to Defendant, via letter, to demand that Defendant immediately repair and pay for all
10 damages caused by Defendant to the Premises prior to the termination of its tenancy and to
11 Plaintiff.  As of the date of the filing of this Complaint, neither Plaintiff nor Plaintiff's counsel has
12 received a response from Defendant or Defendant's counsel.  Defendant's failure to indemnify and
13 hold harmless Plaintiff for its willful and malicious conduct constitutes breach of its above-
14 referenced obligations in the Lease Agreement to indemnify and hold harmless Plaintiff for the
15 damage it has caused, and otherwise violates California law.

16     15.    Under paragraph 27 of the Lease Agreement, if Plaintiff prevails in this action, it is
17 entitled to "all court costs, reasonable attorneys' fees, litigation expenses, and other costs" incurred
18 in prosecution of its claims.

19                          **FIRST CAUSE OF ACTION**
20                            **(Breach of Contract)**

21     16.    Plaintiff incorporates by reference each and every allegation contained in this
22 Complaint as if fully set forth herein.

23     17.    The Lease Agreement is a valid and enforceable agreement between Plaintiff and
24 Defendant.

25     18.    Plaintiff has duly performed all duties on its part required to be performed under the
26 Lease Agreement, except as otherwise may have been excused, waived or prevented by the conduct
27 of Defendant.

28

                                5
                             COMPLAINT

19

1      19.     Notwithstanding the terms of the Lease Agreement, Defendant maliciously and

2 willfully caused severe damage to the Premises as described above. Such conduct materially

3 breached the Lease Agreement by: (a) allowing the Premises to be used for an improper purpose,

4 permitting waste on the Premises, and refusing to indemnify and hold harmless Plaintiff for its

5 losses arising out of Defendant's actions, in violation of paragraph 3; (b) making alterations to the

6 Premises without first obtaining the written consent of Plaintiff, and refusing to indemnify and hold

7 harmless Plaintiff for its losses arising out of Defendant's actions, in violation of paragraph 17;

8 (c) failing to maintain, repair and replace all portions of the Premises in good and clean condition

9 or to promptly make necessary repairs thereto, including all low voltage and audio/video wiring

10 located therein, in a manner consistent with first class office buildings located in San Diego,

11 California, and failing to return the Premises to Landlord in substantially the same condition as

12 they were on the Commencement Date, in violation of paragraph 19; (d) failing to indemnify and

13 hold harmless Plaintiff for all losses and other costs attributable to Defendant's conduct, in

14 violation of paragraph 24; (e) failing to surrender possession of the Premises broom clean and in

15 substantially the same condition as it existed on the Commencement Date, failing to repair all

16 damage to the Premises resulting from its removal of certain objects from the Premises at the end

17 of the term of the lease, and failing to pay Plaintiff for the cost of repairing any damage to the

18 Premises caused by such removal, in violation of paragraph 37; and (f) otherwise refusing to

19 indemnify and hold harmless Plaintiff for all losses and costs attributable to Defendant's wrongful

20 conduct.

21      20.     As the proximate result of Defendant's breaches, Plaintiff has incurred damages in

22 an amount in excess of $25,000. The full extent of damages will be proven at trial.

23      21.     Plaintiff has requested that Defendant remedy its breaches as required by the Lease

24 Agreement. Defendant has failed to do so.

25                    **SECOND CAUSE OF ACTION**

26                         **(Waste)**

27      22.     Plaintiff incorporates by reference each and every allegation contained in this

28 Complaint as if fully set forth herein.

23.     Under California law, as a lessee, Defendant had a duty to avoid waste on the Premises.

24.     On or before the end of the term of the Lease Agreement, Defendant willfully and maliciously caused severe damage to the Premises as described above.  Thus, Defendant has caused permanent and/or substantial injury to the Premises by causing waste thereon.  Plaintiff believes that there may be additional aspects of the Premises which have been destroyed through Defendant's actions or neglect.

25.     Defendant's conduct has proximately caused injury to Plaintiff and substantial and permanent damage to the Premises and its wiring system, including without limitation the diminished the market value of the Premises, impaired marketability and usefulness of the Premises, and costs of repair. The full extent of damages will be proven at trial.

26.     Defendant's conduct in committing waste on the Premises was willful and malicious with full knowledge that it would result in substantial and permanent damage to the Premises and its wiring system.  Plaintiff is, therefore, entitled to recover treble damages from Defendant pursuant to C.C.P. § 732.

## THIRD CAUSE OF ACTION

### (Negligent Destruction of Property)

27.     Plaintiff incorporates by reference each and every allegation contained in this Complaint as if fully set forth herein.

28.     Under California law, as a lessee, Defendant had a duty not to destroy or deface the Premises or destroy or damage any property owned by Plaintiff located thereon.

29.     Defendant breached its duty by willfully and maliciously causing severe damage to the Premises and its wiring system as described above.

30.     Defendant's conduct has proximately caused injury to Plaintiff and substantial and permanent damage to the Premises and its wiring system, including without limitation the diminished market value of the Premises, impaired marketability and usefulness of the Premises, and costs of repair. The full extent of damages will be proven at trial.

7
COMPLAINT

21

31.     Defendant's malicious conduct was intended to cause injury to Plaintiff and/or carried on by Defendant with a willful and conscious disregard of the rights of Plaintiff. Defendant was aware of the probable consequences of its conduct and willfully and deliberately failed to avoid such consequences.  Plaintiff is, therefore, entitled to recover exemplary damages from Defendant under California law.

## FOURTH CAUSE OF ACTION

### (Trespass to Chattel)

32.     Plaintiff incorporates by reference each and every allegation contained in this Complaint as if fully set forth herein.

33.     Plaintiff owned the wires constituting the wiring system located on the Premises.

34.     Defendant intentionally damaged the wires constituting the wiring system located on the Premises as described above.

35.     Plaintiff did not consent to Defendant's conduct.

36.     Defendant's conduct was a substantial factor proximately causing Plaintiff to suffer injury.

37.     Defendant's malicious conduct was intended to cause injury to Plaintiff and/or carried on by Defendant with a willful and conscious disregard of the rights of Plaintiff. Defendant was aware of the probable consequences of its conduct and willfully and deliberately failed to avoid such consequences.  Plaintiff is, therefore, entitled to recover exemplary damages from Defendant under California law.

## FIFTH CAUSE OF ACTION

### (Conversion)

38.     Plaintiff incorporates by reference each and every allegation contained in this Complaint as if fully set forth herein.

39.     Plaintiff owned the wires constituting the wiring system located on the Premises.

40.     Defendant intentionally damaged the wires constituting the wiring system located on the Premises as described above.

41.     Plaintiff did not consent to Defendant's conduct.

8
COMPLAINT

1    42.    Defendant's conduct was a substantial factor proximately causing Plaintiff to suffer

2  injury.

3    43.    Defendant's malicious conduct was intended to cause injury to Plaintiff and/or

4  carried on by Defendant with a willful and conscious disregard of the rights of Plaintiff. Defendant

5  was aware of the probable consequences of its conduct and willfully and deliberately failed to

6  avoid such consequences.  Plaintiff is, therefore, entitled to recover exemplary damages from

7  Defendant under California law.

8                          **JURY TRIAL DEMANDED**

9         Plaintiff demands a trial by jury on all issues so triable.

10                          **PRAYER FOR RELIEF**

11        **WHEREFORE**, Plaintiff prays for the following relief:

12    (a)    All damages permitted under California law and/or the Lease Agreement in an

13  amount exceeding $25,000 to be determined according to proof at trial;

14    (b)    Pre-judgment and post-judgment interest on all awarded sums at the highest legal

15  rate, until fully paid;

16    (c)    Treble damages pursuant to C.C.P. § 732;

17    (d)    Exemplary damages under California law;

18    (e)    All court costs, reasonable attorneys' fees, litigation expenses, and other costs

19  incurred in connection with this action permitted under California law and/or the Lease Agreement;

20    (f)    For such other and further relief as this Court deems just proper.

21  DATED: May 3, 2018.                    PROCOPIO, CORY, HARGREAVES &
                                            SAVITCH LLP
22

23

24  By: _____
                                            Edward C. Walton (Bar No. 78490)
25                                          Attorney for Plaintiff
                                            LITTRELL PROPERTIES, LP
26

27

28

                                    9
                              COMPLAINT

# Exhibit A

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("**Lease**") is made and entered into as of March 16, 2015 (the "**Effective Date**"), by and between LITTRELL PROPERTIES, LP, a California limited partnership ("**Landlord**"), and HEALTHSTREAM, INC., a Tennessee corporation ("**Tenant**").

1.    Leased Premises.

        a.    Subject to and upon the terms hereinafter set forth, and in consideration of the sum of Ten Dollars ($10.00) and the mutual covenants set forth herein, the receipt and sufficiency of which are hereby acknowledged, Landlord does hereby lease and demise to Tenant and Tenant does hereby lease and take from Landlord those certain premises consisting of approximately 1.06 acres of land in Rancho Bernardo on Lot 50 in 4S Ranch and commonly known as 17085 Camino San Bernardo, San Diego, CA 92127, a legal description of which is attached as Exhibit A (the "**Property**"), together with the office building (the "**Building**") and related parking areas, driveways and other improvements (the "**Other Improvements**") located thereon, and all rights, privileges, easements, servitudes, right-of-ways and appurtenances belonging or appurtenant to the Property.

        b.    The rentable area of the Building is agreed to be approximately 20,320 rentable square feet. The Building, the Other Improvements and Property are collectively called the "**Premises**". Subject to the Parking and Access Agreement described below, in no event shall Landlord grant to third parties any access rights through, or parking rights upon, the Property during the Lease Term, without the prior, written consent of Tenant. A site plan of the Premises (the "**Site Plan**") is attached hereto as Exhibit B. Landlord represents and warrants that to Landlord's current actual knowledge, ingress and egress to the Property is provided by Camino San Bernardo substantially as outlined in the Site Plan. Landlord represents and warrants that it has the full power and authority to execute this Lease and that it owns the Premises in fee simple, subject to all Encumbrances. As long as Tenant is entitled to possession of the Property, Tenant shall have the exclusive right to use any parking areas, driveways, sidewalks, and other site improvements on the Property as they may exist from time to time, subject, however, to that certain Cross Parking, Ingress and Road Maintenance Agreement dated March 12, 1998, and recorded in the San Diego County Recorder's Office as Document No. 1998-0139543 (the "**Parking and Access Agreement**"). Except to the extent expressly provided otherwise in this Lease, Tenant is taking the Premises in its "AS-IS" condition as of the date that Landlord delivers possession of the Premises to Tenant, with no tenant improvements or other work being performed by Landlord.

2.    Term and Renewal.

        a.    Subject to and upon the terms and conditions set forth herein, or in any exhibit hereto, the initial term of this Lease shall commence on the Commencement Date and shall expire on the last day of the thirty-sixth (36th) full calendar month thereafter (the "**Initial Term**"). "**Commencement Date**" shall mean the Effective Date.

        b.    Provided no Event of Default exists beyond the expiration of any applicable grace and/or notice and cure periods at the time of exercising each renewal option

42

43

described below or as of the first day of any resulting renewal term, Landlord hereby grants to Tenant the option to renew this Lease for three (3) additional successive two (2) year periods (each, a "**Renewal Term**") upon the same terms and conditions set forth herein. Tenant may exercise each such option to renew only by notifying Landlord that Tenant is exercising such option in writing no later than ninety (90) days prior to the expiration date of the term preceding the Renewal Term in question. If Tenant fails to give such notice prior to such ninety (90) day period, the remaining renewal options shall be deemed null and void. References herein to "Term" or "Lease Term" or the "Term of this Lease" shall include the "Initial Term" and the "Renewal Term(s)" as to which the foregoing renewal options are timely and properly exercised.

3.   Use.

The Premises may be used by Tenant and any permitted assignee, sublessee or other occupant of the Premises for general office purposes, as a call center, as a data center, and for ancillary purposes related to the foregoing, and for no other purpose. Tenant shall not use or allow any portion of the Premises to be used for any improper, disreputable or objectionable purpose, nor shall Tenant cause or permit any nuisance or waste in, on or about the Premises. Tenant shall not use or permit any portion of the Building to be used as sleeping quarters, lodging rooms, or for any unlawful purposes. All use of the Premises shall also comply with and be subject to applicable zoning and building codes; provided that Tenant shall have no obligation to make any alterations, additions, or improvements to the Premises in connection therewith, except as may be required by law in connection with Tenant's particular use of the Premises (but not with respect to alterations, additions or improvements required by law as a result of a use consistent with the use of the Premises immediately prior to the Commencement Date). Tenant will have, throughout the Term, access to the roof of the Building and all other portions of the Premises for installation and maintenance of any conduits, cables and other equipment installations necessary for its communications, data processing, and any other requirements necessary for the conduct of the Tenant's business, all of which shall be at Tenant's sole cost. Tenant shall cause such installation and maintenance of this equipment to be constructed in such a manner as to not violate the roof or other building systems warranties or applicable law. Tenant shall give Landlord reasonable advance notice of Tenant's intention to access the roof for any purposes set for above, and Landlord shall have the right to accompany Tenant or to cause any installations to be made by or under the supervision of Landlord's designated contractor, and Tenant shall pay the actual, out-of-pocket expenses directly related to Landlord-designated contractor's performing any such installations. Tenant shall indemnify, defend and hold harmless Landlord from any and all costs, claims, losses, liabilities, damages, injuries, suits and causes of action arising out of or relating to any Tenant's actions or installations conducted on the Premises, including (without limitation) reasonable attorneys' fees.

4.   Rent.

Commencing on the Commencement Date and continuing thereafter throughout the full Term of this Lease, Tenant hereby agrees to pay the Base Rent and Additional Rent (as defined in Section 5 below); Base Rent and Additional Rent are hereinafter collectively referred to as "Rent."

2

The base rent for the Premises ("**Base Rent**") shall initially be Four Hundred Twenty Thousand and No/100 Dollars ($420,000.00) per year. In the event one or more of the renewal options is exercised pursuant to Section 2 above, then on the first day of the first Renewal Term, and each year of the Lease Term thereafter on the anniversary of the first day of the first Renewal Term, the Base Rent shall increase by two and one-half percent (2.5%) of the Base Rent in effect immediately prior to such date. The Base Rent and estimated Additional Rent shall be due and payable in advance in equal monthly installments on the first (1st) day of each calendar month at Landlord's address as provided herein (or such other address as may be designated by Landlord in writing from time to time) without notice, set off, demand or abatement, except as otherwise expressly provided in this Lease. With respect to any partial month at the beginning or end of the Term, the installment of Base Rent and Additional Rent for such month shall be prorated.

5.    Additional Rent.

a.    Tenant shall pay all Operating Expenses, Taxes and Insurance Costs (each as defined below) for the Premises during the Term, together with any other charges payable hereunder by Tenant in addition to Base Rent (collectively, the "**Additional Rent**").

b.    Landlord shall present to Tenant prior to the beginning of each calendar year (or for the calendar year in which the Lease term commences, on the Commencement Date) a statement of Tenant's estimated Additional Rent. Landlord's failure to deliver such a statement of Tenant's estimated Additional Rent shall not operate to excuse Tenant from the payment of the monthly installment of Additional Rent. Rather, Tenant shall continue to pay the monthly installment of Additional Rent based on Landlord's most recent calculation thereof until such a statement is delivered to Tenant, with such statement being applied retroactively to the beginning of the calendar year and Tenant making up any under payments immediately upon its receipt of such statement. Landlord may, from time to time (but not more than twice per calendar year), recalculate Tenant's estimated Additional Rent in order to more accurately reflect Landlord's good faith estimate of Tenant's Additional Rent, and Tenant shall commence paying the recalculated Additional Rent immediately after receiving notice thereof.

c.    Landlord shall provide to Tenant, within one hundred twenty (120) days after the end of each calendar year, a statement detailing the Operating Expenses, Taxes and Insurance Costs for each such calendar year (the "**Annual Expense Statement**"). In the event that Tenant's estimated Additional Rent payments shall have exceeded Tenant's actual Additional Rent paid for said calendar year, Landlord shall pay Tenant (in the form of a credit against rentals next due, or upon expiration of this Lease, in the form of Landlord's check) an amount equal to such excess. In the event that Tenant's actual Additional Rent due shall exceed Tenant's estimated Additional Rent payments for said calendar year, Tenant hereby agrees to pay Landlord, within thirty (30) days of receipt of the statement, an amount equal to such difference. If the Term does not commence on January 1st, then the Additional Rent for the first calendar year of the Term and the last calendar year of the Term shall be prorated appropriately on an annualized basis.

d.    Landlord shall maintain reasonably detailed books and records of all Operating Expenses and Insurance Costs paid by Landlord. Tenant shall have the right no more

3

than one (1) time for each calendar year during the Term, after reasonable notice to Landlord, during normal business hours, to inspect, review, or audit the books and records of Landlord relating to the calculation of Operating Expenses, Taxes and Insurance Costs; provided, however, Tenant shall have no right to conduct such inspection, have an audit performed by the Accountant (as defined below), or object to or otherwise dispute the amount of the Operating Expenses, Taxes and Insurance Costs set forth in any Annual Expense Statement unless Tenant notifies Landlord of such objection and dispute, completes such inspection, and has the Accountant commence and complete such audit within one (1) year immediately following Landlord's delivery of the applicable Annual Expense Statement (the "**Review Period**"). Notwithstanding any such timely objection, dispute, inspection and/or audit, Tenant shall not be permitted to withhold payment of, and Tenant shall timely pay to Landlord, the full amounts as required by the applicable provisions of this Lease in accordance with such Annual Expense Statement. If after such inspection and/or request for documentation, Tenant still disputes the amount of the Operating Expenses, Taxes and Insurance Costs set forth in the Annual Expense Statement, Tenant shall have the right, within the Review Period, to cause an independent certified public accountant (which is not paid on a commission or contingency basis) selected by Tenant subject to the reasonable approval of Landlord (the "**Accountant**") to complete an audit of Landlord's books and records to determine the proper amount of the Operating Expenses, Taxes and Insurance Costs incurred and amounts payable by Tenant for the calendar year which is the subject of such Annual Expense Statement. Such audit by the Accountant shall be final and binding upon Landlord and Tenant. If the audit reveals an overcharge by Landlord, then Landlord shall refund any such overcharge in the form of a credit against rentals next due, or upon expiration of this Lease, in the form of Landlord's check within thirty (30) days after notice from Tenant. If the audit reveals an undercharge by Landlord, then Tenant shall pay such difference within thirty (30) days after notice from Landlord. Tenant shall pay the cost of such audit unless it is determined that Landlord's original Annual Expense Statement which was the subject of such audit overstated Operating Expenses, Taxes and Insurance Costs by more than five percent (5%) of the actual Operating Expenses, Taxes and Insurance Costs which was the subject of such audit, in which case Landlord shall reimburse Tenant for the reasonable cost of such audit within thirty (30) days after Landlord's receipt of an invoice therefor. In connection with any inspection and/or audit conducted by Tenant pursuant to this Section, Tenant agrees to keep and to instruct all of Tenant's employees and consultants and the Accountant to keep, all of Landlord's books and records and the audit, and all information pertaining thereto and the results thereof, confidential (except as necessary to enforce Tenant's rights hereunder, as may be required by any court to disclose such information or if such information is available from an inspection of public records). Notwithstanding any provision contained in this Lease to the contrary, Tenant's obligation to pay Controllable Operating Expenses (as hereinafter defined) as additional Rent for any year during the Term of this Lease shall not increase by more than five percent (5%) over the Controllable Operating Expenses payable by Tenant as Additional Rent the previous year of the Term, determined on a non-cumulative basis. As used herein, the "**Controllable Operating Expenses**" shall mean all Operating Expenses that are within the reasonable control of Landlord other than Taxes, Insurance Costs in accordance with Section 22, and costs incurred pursuant to the Parking and Access Agreement.

       e.     Any other sums due and payable by Tenant hereunder shall also be considered Additional Rent.

4

6.    Taxes, Insurance and Operating Expenses.

a.    Taxes.    Landlord shall present Tenant with all tax notices, bills or assessments imposed upon the Premises. Tenant shall timely pay as Additional Rent the ad valorem taxes imposed upon the Premises (or any tax hereafter imposed in lieu thereof), and all other taxes, including, without limitation, assessments, utility charges, and other governmental charges, whether general or special, ordinary or extraordinary or foreseen or unforeseen, of every character charged or assessed in respect of the Premises or the Rent which may be assessed or imposed upon or in respect of the Premises and the Term hereof, and legal fees and costs resulting from any challenge requested by Tenant of any such taxes or other impositions (collectively, the **"Taxes"**). Tenant shall have the right to require Landlord to challenge any such taxes or other impositions, at no cost to Landlord, if there is a reasonable basis for such challenge, provided Tenant posts any security or pays any Taxes required by law or by the taxing authority in connection with the challenge. Upon request of Tenant, Landlord shall cooperate with Tenant by assigning to Tenant the right to proceed on behalf of or in the name of Landlord with respect to the challenge of any such tax or imposition. Landlord's income, profit, excise and franchise taxes and similar taxes as well as any inheritance, estate, succession, gift or any form of property transfer tax or indebtedness tax which may be assessed or levied against Landlord or any mortgagee of Landlord (collectively, the **"Tax Exclusions"**) are specifically excluded from Taxes for purposes of this paragraph.

b.    Insurance Premiums.    Tenant shall pay as Additional Rent the premiums charged (the **"Insurance Costs"**) for all reasonable insurance policies carried by Landlord in accordance with Section 22, provided that, upon request by Tenant, Landlord presents Tenant with proof of such insurance policies and the premiums due. Tenant reserves the right periodically to request proof of insurance and proof of payment of premiums.

c.    Operating Expenses.    Tenant shall pay as Additional Rent, without duplication, all of the reasonable costs incurred by Landlord in each calendar year of operating, maintaining, repairing and managing the Premises (the **"Operating Expenses"**). The Operating Expenses include, without limitation, all reasonable costs incurred by Landlord in rendering the services required under Sections 18 and 19 below, and all costs of landscaping and irrigation maintenance (but not the cost of the initial installation of landscaping and irrigation), exterior lighting, parking lot sweeping, security, interior sprinkler maintenance and service, fire line inspection and maintenance, sewer line cleanouts, snow and ice removal, striping, repairing, resealing all parking areas, sidewalks, curbs and walkways, applicable assessments imposed by any owner's association under any applicable declaration, the cost of maintaining and repairing any paved right of way which provides access to the Premises, drainage and lighting facilities, garbage collection, janitorial services, HVAC maintenance, common plumbing, roof maintenance, window washing, light bulb replacement, the maintenance of building identification signs, and all costs paid by Landlord pursuant to the Parking and Access Agreement.

Notwithstanding anything to the contrary contained in this Lease, the following items shall not be included in Operating Expenses: (i) any expenses which under generally accepted accounting principles would not be considered a maintenance, repair and/or operating expense for a comparable commercial facility, (ii) costs associated with the operation of the business of

5

entity which constitutes the "Landlord", including, but not limited to, the legal and accounting costs associated with the leasing, selling, syndicating, financing, mortgaging, or hypothecating of any of Landlord's interest in the Premises, (iii) costs of disputes between Landlord and its employees, tenants or contractors (except to the extent any direct benefit to Tenant), (iv) depreciation and/or amortization of the Premises, except for amortization of capital costs properly included within Operating Expenses, and except for amortization of costs of materials, tools, supplies, and vendor-type equipment purchased by Landlord to enable Landlord to supply services Landlord might otherwise contract for with a third party for where such depreciation, amortization and interest payments would otherwise have been included in the charge for such third party's services, (v) the cost of repairs or other work incurred by reason of fire, windstorm or other casualty (except for deductibles in amounts not exceeding the deductibles described in Section 22 without Tenant's consent) paid under insurance contracts, (vi) Landlord's gross receipts taxes, personal and corporate taxes, inheritance and estate taxes, franchise, gift or transfer taxes or other Tax Exclusions, (vii) fines, penalties and other government imposed charges inclusive of interest and attorney fees incurred solely as a result of Landlord's failure to comply with legal or regulatory requirements, (viii) costs relating to challenging the assessed valuation of the Premises including attorneys' fees, except for any costs or expenses incurred by Landlord in challenging tax assessments at the request of Tenant; (ix) capital expenditures except to the extent such expenditures are reasonably intended to reduce Operating Expenses or are required as a result of changes in applicable governmental requirements enacted after the Commencement Date, in either which case such capital expenditures shall be amortized by Landlord on a straight line basis over the useful life of the expenditures and treated as Operating Expenses hereunder, (x) construction defects or repairs due to the grossly negligent or willful acts or omissions of Landlord or its agents or others under its control, (xi) advertising or other promotional costs concerning the Premises, (xii) ground lease payments, payments on mortgages or other debt obligations, (xiii) any expense which is reimbursed by insurance, warranties or third parties; (xiv) management fees in excess of 3% of annual Base Rent; (xv) wages, salaries, or other compensation paid to any executive above the level of building manager; (xvi) expenditures for compliance with any Law regarding the environment or hazardous waste and materials the violation of which existed at or prior to the Commencement Date hereof for which Tenant is not legally responsible; (xvii) expenses of Landlord in curing defaults or performing work expressly provided in this Lease to be borne at Landlord's expense; (xviii) Landlord's general corporate overhead and administrative expenses; (xi) penalties for late payment, including, without limitation, penalties for late payment of any equipment leases, and other amounts owing by Landlord; (xx) wages, salaries, benefits or expenses attributable to off-site personnel, except to the extent such personnel are involved in the operation or management of the Premises; (xxi) except for emergencies, rentals and other related expenses, if any, incurred in leasing air conditioning units, elevators or other equipment ordinarily considered to be of a capital nature except equipment the costs of would have been included in Operating Expenses had Landlord purchased such equipment, but not any amounts in excess of the Operating Expenses that Landlord would have incurred had Landlord purchased such equipment; (xxii) initial costs of construction prior to the Effective Date of the Building, the Other Improvements, and the parking lots, driveways, sidewalks, landscaping, courtyard and any other improvements on the Premises; (xxiii) the costs of any initial "tap fees" or one time lump sum sewer or water connection fees for the Premises; (xxiv) costs or fees relating to the defense of Landlord's title to or interest in the Premises, or any part thereof, or any

6

costs or expenses associated with any sale or finance transaction; (xxv) expenses and costs of encapsulation, removal, or abatement of hazardous substances located on the Premises prior to the Commencement Date required to be encapsulated, removed, or abated pursuant to applicable laws (hereinafter defined); (xxvi) costs or expenses, including judgments, incurred in connection with tort claims against Landlord (including the cost of investigating, defending, or settling the same), except to the extent related to the negligence or willful misconduct of Tenant or any of its agents, employees, contractors or invitees or the breach of this Lease by Tenant, (xxvii) payments to subsidiaries or affiliates of Landlord for goods or services which as a result of a non-competitive selection process materially exceed the cost of such goods or services if obtained by parties unaffiliated with Landlord, to the extent of such excess; and (xxviii) costs for the acquisition of sculpture, paintings or other objects of art unless Tenant expressly consents in writing, and (xxix) any charges otherwise payable by Tenant under another provision of this Lease (i.e. no duplicative charges).

If any costs properly included in Operating Expenses are attributable to other properties owned by Landlord in addition to the Premises, only a portion of those costs that are reasonably attributable to the Premises shall be included in Operating Expenses.

7.    Utilities.

a.    Landlord shall deliver the Premises to Tenant with facilities to provide utilities installed and operational with separate meters installed and all connection and meter fees paid. Subject to the foregoing, Tenant shall place in its own name and pay directly to the appropriate utility companies the cost of water, sewer, gas, electrical, cable and any other utilities supplied to the Premises during the Term. Any cessation, disruption or inadequacy of utilities to the Premises shall not render Landlord liable for damages to either person or property, nor be construed as actual or constructive eviction of Tenant, nor work an abatement of rent, nor relieve Tenant from fulfillment of any covenant or agreement hereof; provided, however, if an interruption or failure of utility services caused by the negligence or willful misconduct of Landlord or any of its employees or contractors continues for more than five (5) business days after receipt by Landlord of written notice by Tenant of such interruption or failure, Tenant shall receive an equitable abatement of Rent including any Additional Rent hereunder from the date of such written notice until such time as the services are restored.

b.    For any utilities serving the Premises for which Tenant is billed directly by such utility provider, Tenant agrees to promptly furnish to Landlord (a) any invoices or statements for such utilities and any other utility usage information reasonably requested by Landlord, and (b) authorization to allow Landlord to access Tenant's usage information necessary for Landlord to complete an ENERGY STAR® Statement of Performance or similar comprehensive utility usage report (e.g., related to Labs 21), if requested by Landlord, and any other utility information reasonably requested by Landlord. Provided Tenant does not incur any additional costs or expenses, Tenant agrees at all times to reasonably cooperate with Landlord and to abide by all reasonable rules established by Landlord in order to comply with the requirements of utility suppliers and governmental agencies regulating the consumption of energy and/or other resources. Tenant shall retain records of invoices and statements from the utility provider, for at least sixty (60) months or until copies thereof have been provided to Landlord. Tenant acknowledges that any utility information for the Premises may be shared with

7

third parties, including Landlord's consultants and governmental authorities. In the event that Tenant fails to comply with this Section, Tenant hereby authorizes Landlord to collect utility usage information directly from the applicable utility providers. The provisions of this Section shall survive the expiration or earlier termination of this Lease.

c.    Tenant acknowledges that Landlord may be required to disclose certain information concerning the energy performance of the Property pursuant to California Public Resources Code Section 25402.10 and the regulations adopted pursuant thereto (collectively the **"Energy Disclosure Requirements"**). Tenant hereby waives any rights under the Energy Disclosure Requirements and further waives any right to receive the Disclosure Summary Sheet, Statement of Energy Performance, Data Checklist, and Facility Summary, all as defined in the Energy Disclosure Requirements (collectively, the **"Energy Disclosure Information"**). Tenant hereby forever releases Landlord of any liability under the Energy Disclosure Requirements, including, without limitation, any liability of Landlord arising as a result of Landlord's failure to provide to Tenant the Energy Disclosure Information. The provisions of this Section shall survive the expiration or earlier termination of this Lease.

8.    Keys and Locks

Landlord shall furnish Tenant with all keys for each lockset on the doors to the Building. Upon termination of this Lease, Tenant shall surrender to Landlord all keys to any locks on doors entering or within the Building, and give to Landlord the explanation of the combination of all locks for safes, safe cabinets and vault doors, if any, in the Building.

9.    Signage.

Tenant shall have the right to place on any portion of the Premises any sign or advertising matters without obtaining Landlord's consent, provided such signs and advertising comply with law and the Parking and Access Agreement. Tenant agrees to maintain such signs or advertising matter in good condition and repair. All signs shall comply with the requirements of Law and the Parking and Access Agreement, and the determination of such requirements and prompt compliance therewith shall be the responsibility of the Tenant.

10.    Parking.

Landlord will provide for Tenant's exclusive use (subject to the Parking and Access Agreement) at all times a minimum of forty-five (45) parking spaces on the Property, in the general location shown on the Site Plan, subject to temporary closures reasonably necessary for maintenance, repair, replacement or improvement or otherwise in accordance with the terms of this Lease or the Parking and Access Agreement. Notwithstanding the foregoing, in the event Landlord fails for any reason to provide at least forty-five (45) parking spaces in accordance with the terms of this Section 10, and such failure continues for more than five (5) business days after written notice of such failure by Tenant to Landlord, then (a) without limiting Tenant's other rights and remedies for such failure, Tenant shall have the right to seek alternate parking and Landlord shall reimburse Tenant for the reasonable costs incurred by Tenant to obtain such parking within thirty (30) days after receipt of an invoice therefor accompanied by reasonable documentary evidence of such costs, and (b) if Landlord fails to provide at least ninety percent

8

(90%) of such parking spaces for a period in excess of six (6) months, Tenant shall be entitled to terminate the Lease upon notice to Landlord.

11.    Entry for Repairs and Inspection.

Provided that Landlord provides reasonable prior notice, Tenant shall permit Landlord and its contractors, agents or representatives to enter into and upon any part of the Premises during reasonable hours to inspect or clean the same, make repairs and perform other obligations of Landlord hereunder; and for the purpose of showing the same to prospective tenants (but only during the last six (6) months of the Term) or purchasers. Landlord shall use its reasonable efforts not to interfere with the operation of Tenant's business during any such entry. Notwithstanding any of Landlord's rights to enter the Building pursuant to the terms of this Lease, Landlord shall not cause Tenant to in any way violate any laws, regulations or ordinances intended to protect the rights and privacy of confidential patient and billing information processed in Tenant's operations, including those relating to any and all patient and billing records and the computers and servers that store such records, which at any time, Tenant shall be able to secure in locked storage units or remove from the Property.

12.    Laws and Regulations; Encumbrances.

a.    Landlord shall deliver the Premises in compliance with all Laws (hereinafter defined) and all existing covenants, restrictions, easements or other matters of record that encumber the Premises (collectively, the "**Encumbrances**"), and if the Premises are not in compliance with all Laws and Encumbrances as of the delivery of the Premises to Tenant, Landlord will make such alterations (at Landlord's cost and not as part of Operating Expenses) as may be required in order to cause the Premises to comply with such Laws and Encumbrances. Landlord represents and warrants that Landlord has no knowledge of any current alleged or actual violation of any Law (including those pertaining to public and private restrictions, fire, safety, zoning and building laws and ordnances, and the ADA) or any Encumbrance relating to the current use of the Premises or that would in any way restrict Tenant's ability to use and occupy the Premises for Tenant's permitted use under this Lease.

b.    From and after the date hereof, Landlord covenants that it shall not enter into or record any other covenants, restrictions, easements or other matters, or amend or modify the Encumbrances in any way, that would in any way restrict Tenant's ability to use and occupy the Premises for Tenant's permitted use under this Lease. From and after the date hereof, Tenant shall comply with, and Tenant shall cause its employees, contractors and agents to comply with, and shall use its commercially reasonable efforts to cause its visitors and invitees to comply with, all laws, ordinances, orders, rules and regulations of all state, federal, municipal and other governmental or judicial agencies or bodies relating to the use, condition or occupancy of the Premises (collectively, "Laws"); provided, however, that in no event shall Tenant have any obligation to make structural alterations, additions or improvements to the Premises, except as may be required by Law in connection with Tenant's particular use of the Premises (but not with respect to alterations, additions or improvements required by law as a result of a use consistent with the use of the Premises immediately prior to the Commencement Date). Notwithstanding the foregoing, Tenant shall not be responsible for any violations of Law that are Landlord's responsibility pursuant to Section 12(a) above.

9

c.    Notwithstanding any of the foregoing, Tenant shall be responsible for making any alterations or additions to the Premises necessitated by and to the extent that Tenant (i) changes the use of the Premises to a use no longer consistent with the use of the Premises immediately prior to the Commencement Date, or (ii) performs alterations or modifications to the Premises.  As used herein, "ADA" means the Americans with Disabilities Act of 1990, 42 USC section 12101 et. seq. and all analogous state and local laws, and all rules and regulations promulgated to further the purpose thereof.

13.    Hazardous Substances.

Tenant shall comply, at its sole expense, with all laws, ordinances, orders, rules and regulations of all state, federal, municipal and other governmental or judicial agencies or bodies relating to the protection of public health, safety, welfare or the environment (collectively, "Environmental Laws") in the use, occupancy and operation of the Premises. Except for de minimis amounts customarily found in cleaning and office products, Tenant agrees that no Hazardous Substances shall be used, located, stored or processed on the Premises by Tenant or any of its agents, employees, contractors, assigns, subtenants, and no Hazardous Substances will be released or discharged from the Premises by Tenant.  The term "Hazardous Substances" shall mean and include all hazardous and toxic substances, wastes or materials, and all other pollutants or contaminants, including, without limitation, PCBs, petroleum, asbestos and raw materials that include hazardous constituents or any other similar substances or materials that are now or hereafter included under or regulated by any Environmental Laws or that would pose a health, safety or environmental hazard. Except as may be caused by the gross negligence or willful misconduct of Landlord, Tenant hereby agrees to indemnify, defend and hold harmless Landlord from and against any and all losses, liabilities, damages, injuries, expenses (including, but not limited to, consulting fees, court costs, litigation expenses, reasonable attorneys' fees and costs of settlement or judgment), suits and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Landlord by any person, entity or governmental agency for, with respect to, or as a result of, the presence of any Hazardous Substances placed on or discharged from the Premises by Tenant or any of its agents, employees, contractors, invitees, assigns, or subtenants. Notwithstanding any provision contained herein to the contrary, Landlord represents to Tenant that, to Landlord's current actual knowledge, there are no Hazardous Substances within the Building or in, on or under the Property in violation of any Environmental Law.  Landlord hereby represents and warrants as of the date hereof, with respect to the Property, Landlord has not received any written citation, directive, inquiry, notice, order, summons, warning, or other communication that relates to any alleged, actual or potential violation of or failure to comply with any Environmental Laws.

14.    Tenant Taxes.

Tenant shall pay promptly when due all taxes directly or indirectly imposed or assessed on Tenant's gross sales, business operations, machinery, equipment, trade fixtures and other personal property or assets.  In the event that such taxes are imposed or assessed against Landlord or the Premises, Landlord shall furnish Tenant with all applicable tax bills, public notices and other assessments or impositions and Tenant shall forthwith pay the same either directly to the taxing authority or, at Landlord's option, to Landlord.

10

15.    Intentionally Deleted.

16.    Intentionally Deleted.

17.    Alterations to Premises.

Except for any Permitted Alterations (hereinafter defined), Tenant shall not make or allow to be made any alterations or physical additions in or to the Premises, without first obtaining the written consent of Landlord which consent shall not be unreasonably withheld, conditioned or delayed.

a.    Tenant shall indemnify and hold harmless Landlord from and against all costs (including reasonable attorneys' fees and costs of suit), claims, losses, liabilities, damages, injuries, suits and causes of action arising out of or relating to any alterations, additions or improvements made by Tenant to the Premises, including, but not limited to, any mechanics' or materialmen's liens asserted in connection therewith.  No portion of Landlord's fee simple interest in the Premises shall be subject to attachment on account of any additional work performed by or on account of Tenant.

b.    Should any mechanic's or other liens be filed against any portion of the Premises by reason of Tenant's acts or omissions or because of a claim against Tenant, Tenant shall cause the same to be canceled or discharged of record by bond or otherwise within thirty (30) days after written notice by Landlord.  If Tenant shall fail to cancel or discharge any such lien or liens within said thirty (30) day period and such failure continues for ten (10) days following written notice thereof from Landlord to Tenant, Landlord may, at its sole option, cancel or discharge the same and upon Landlord's demand, Tenant shall promptly reimburse Landlord for all reasonable costs incurred in canceling or discharging such lien or liens, including reasonable attorneys' fees.

c.    Notwithstanding any provision contained in this Lease to the contrary, Tenant shall have the right to make the following alterations to the Premises without obtaining Landlord's prior consent (the "**Permitted Alterations**"): (i) interior, non-structural alterations which do not cost in excess of Twenty Thousand and No/100 Dollars ($20,000) in any one instance and do not adversely affect the Premises or affect the structure of the Building; and (ii) cosmetic alterations such as changing carpets, floor coverings, wall coverings and painting. Tenant shall give Landlord advance written notice of all Permitted Alterations to be made by Tenant whenever the cost of such Permitted Alterations exceeds Five Thousand and No/100 Dollars ($5,000.00).

18.    Landlord's Maintenance Obligations.

During the term of this Lease, Landlord shall make such repairs or replacements to the roof (including the membrane), exterior walls and structural portions of the Building (including foundation and slab), all Building systems existing as of the Effective Date (including, without limitation, mechanical, HVAC, electrical, plumbing and fire/life safety systems serving the Building in general), and all exterior areas of the Building and Premises as are necessary to maintain the Building and the Premises in good repair, in a manner consistent with first class office buildings located in San Diego, California.  Landlord shall also resurface the driveways

11

and parking lots, as reasonably necessary to maintain the same in good repair. The cost of such repairs shall be a part of Operating Expenses in accordance with Section 6(c), except that Tenant shall pay on demand Landlord's costs for any repairs necessitated by the acts or omissions of Tenant or Tenant's agents, contractors, employees, visitors or invitees, or caused by a breach of this Lease by Tenant, plus an administrative fee of five percent (5%) of such costs to the extent not covered by Landlord's insurance. The cost of any capital replacements, additions or modifications, structural components of the Building shall be the responsibility of Landlord except as otherwise provided in this Lease.

Notwithstanding any provision contained herein to the contrary, (a) Landlord shall have no obligation to repair or replace any portion of the Premises until Tenant has notified Landlord of the need for such repair or replacement, and (b) if Landlord fails to commence any of its maintenance, repair, or replacement obligations pursuant to this Section 18 for more than 10 days after written notice from Tenant (although notice shall not be required if there is an emergency), Tenant may perform such maintenance, repairs, and replacements, and Landlord shall pay to Tenant the reasonable cost thereof within 30 days after receipt of an invoice from Tenant subject to inclusion of such reimbursement in Operating Expenses). If Landlord fails to reimburse Tenant for such costs within such 30 day period, Tenant shall be entitled to receive a credit against the rent next due and payable in the amount of such unreimbursed costs.

19.   Tenant's Maintenance Obligations.

During the term of this Lease, Tenant shall maintain, repair and replace all portions of the Premises that are not the responsibility of Landlord pursuant to Section 18 above in good and clean condition, promptly making all necessary repairs thereto (including, without limitation, all interior walls, windows, floors, ceiling, light fixtures, and all low voltage and audio/video wiring located therein), all in a manner consistent with first class office buildings located in San Diego, California, except (a) to the extent required to be maintained by Landlord pursuant to Section 18 above, (b) as expressly provided otherwise in this Lease, and (c) to the extent caused by the gross negligence or willful misconduct of Landlord or its agents, contractors or employees. Tenant will be solely responsible for any security and janitorial services to be provided to the Premises, and Landlord shall have no responsibility to provide such services. Landlord agrees that, prior to Commencement Date, it shall be responsible for ensuring that all electrical systems, heating and air conditioning systems and other Building systems in the Premises shall be in good working order and condition. Any and all of the costs and expenses incurred by Landlord in order to comply with its obligations under the previous sentence shall be at Landlord's cost and as part of Operating Expenses.

At the end of the Term of this Lease, Tenant shall return the Premises to Landlord in substantially the same condition as they were on the Commencement Date (but as altered or improved after such date in compliance with the requirements of this Lease), excepting only normal wear and tear, damage by casualty or condemnation, and construction, maintenance, repairs, and replacements required hereunder to be completed by Landlord.

20.   Condemnation.

12

If all or substantially all of the Premises shall be permanently taken or condemned for any public purpose, then Landlord or Tenant may terminate this Lease by written notice to the other. If less than all or substantially all of the Premises shall be taken, then this Lease shall continue in full force and effect except that Base Rent and Additional Rent shall be adjusted on an equitable basis; provided, however, that if any portion of the Building is taken that materially interferes with the conduct of Tenant's business in the Premises, or more than ten percent (10%) of the required parking spaces pursuant to Section 10 above is taken, or if any permanent taking (or temporary taking for longer than six (6) consecutive months) materially limits access to the Property, then Tenant shall have the option of terminating this Lease by written notice to Landlord given no later than ten (10) days following the date of such condemnation or taking. Notwithstanding anything above to the contrary, in the event more than ten percent (10%) of the required parking spaces pursuant to Section 10 above are taken, Landlord shall have thirty (30) days after receipt of Tenant's termination notice to provide replacement parking. If Landlord provides replacement parking up to the level required hereunder within such time and if such replacement parking is adjacent to the Premises or otherwise satisfactory to Tenant in its reasonable discretion, then the Lease shall continue in full force and effect. If this Lease is terminated as provided above, this Lease shall cease and expire as of the date of the taking. In the event that this Lease is not terminated and a portion of the Premises is taken, Tenant shall pay the Rent up to the date of the taking, and this Lease shall thereupon cease and terminate with respect to the portion of the Premises so taken. Thereafter the Base Rent and Additional Rent shall be adjusted on an equitable basis. If this Lease is not terminated, Landlord shall promptly repair the Premises or the Building, as the case may be, to a complete architectural unit, fit for Tenant's occupancy and business; provided, however, that Landlord's obligation to repair hereunder shall be limited to the extent of the net proceeds from such taking made available to Landlord for such repair. For purposes hereof, the "net proceeds" from any taking shall refer to the gross proceeds of such taking, net of any reasonable costs and expenses incurred in obtaining such proceeds; for avoidance of doubt, any proceeds used by Landlord to pay down existing mortgage debt upon the Property shall not be deducted therefrom. If the net proceeds are not sufficient to complete repair of the Premises to substantially the same level of finish as in place prior to such taking, Landlord shall so notify Tenant. Tenant shall thereafter have the right to terminate this Lease within ten (10) days following such notice from Landlord; provided however, Landlord shall have the right to void such termination by electing to fund such shortfall within ten (10) days following Tenant's termination notice. In the event of any temporary taking or condemnation for any public purpose of the Premises or any portion thereof, this Lease shall continue in full force and effect except that Base Rent and Additional Rent shall be adjusted on an equitable basis for the period of such taking. For purposes hereof, any temporary taking or condemnation that lasts longer that one year may, at Tenant's option, be treated as a permanent taking instead of a temporary taking. In the event of any taking of the Premises, Tenant hereby assigns to Landlord the portion of the award relating to the unexpired term of this Lease and all leasehold improvements (to the extent paid for by Landlord), and Tenant shall not assert a claim in condemnation award therefor; provided, however, that Tenant may pursue a separate award from the condemning authority for (a) relocation and moving expenses, (b) compensation for loss of Tenant's business, and (c) Tenant's unamortized leasehold improvements to the extent such improvements were not paid for by Landlord.

21.    <u>Casualty</u>.

13

a.      In the event any portion of the Premises or the Building is damaged by fire or other casualty, earthquake or flood or by any other cause of any kind or nature, and the damage can, in the opinion of the Landlord's architect, be repaired within one hundred eighty (180) calendar days from the date of the casualty, then Landlord shall promptly repair the damage.  If in the opinion of Landlord's architect, the damage cannot be repaired within one hundred eighty (180) days from the date of the casualty, then either Landlord or Tenant shall have the right to terminate this Lease within thirty (30) days following the date the terminating party receives notice of the opinion of Landlord's architect.   Within thirty (30) days after the occurrence of any such casualty, Landlord shall cause its architect to certify and deliver to Tenant such architect's opinion as to how much time is reasonably required to repair such damage, and in the event such architect fails to provide such certification to Tenant within such time frame, then Tenant shall be entitled to select an architect to make the certifications and determinations required pursuant to this paragraph.

b.      Notwithstanding any language herein to the contrary, either Landlord, or Tenant, shall have the right to terminate this Lease if at the time of any such damage, (i) less than one (1) year remains in the term of this Lease, and (ii) the cost of repairing and restoring the damage exceeds twenty-five percent (25%) of the replacement cost of the Building; provided, however, that if Landlord terminates this Lease pursuant to this subsection 21(b), Tenant may exercise an option to renew this Lease for a Renewal Term (but only if a Renewal Term indeed remains unexercised at such time), and upon any such renewal, this Lease shall be reinstated and Landlord shall promptly repair such damage, all as if such termination had never occurred.

c.      In the event this Lease is not terminated as provided hereunder, Landlord shall be obligated to repair the damage to the extent of the net insurance proceeds received by Landlord (for the purposes of this Section 21, insurance proceeds received by Landlord's lender are deemed to be received by Landlord) and any applicable deductible, Tenant shall be entitled to a pro rata abatement of Base Rent and Additional Rent during the period of time the Premises, or any portion thereof, are untenantable due to such damage.  If the net insurance proceeds received by Landlord are insufficient to complete the repair of the Premises to substantially the same level of finish as in place prior to the casualty loss, Landlord shall so notify Tenant.  Tenant shall thereafter have the right to terminate this Lease within twenty (20) days following such notice from Landlord; provided, however, Landlord shall have the right to void such termination by electing to fund any shortfall within ten (10) days following Tenant's termination notice.

d.      In the event Tenant desires to terminate this Lease pursuant to this section, and provided that Landlord's architect has certified the time reasonably required for repair within thirty (30) days after the occurrence of any casualty, written notice of termination must be given within forty-five (45) days of the date of the casualty and this Lease shall cease and terminate as if the date of such casualty were the expiration date of the term of this Lease.  If Landlord's architect takes longer than thirty (30) days to certify the required time for repair, then Tenant's time period for giving notice of termination shall be extended on a day by day basis for each day that the architect's certification is late.

e.      Notwithstanding any provision contained herein to the contrary, if Landlord does not complete such repairs or rebuilding of the Premises within 240 days following the date of the casualty, Tenant may terminate this Lease upon written notice of termination to

14

Landlord prior to the date Landlord completes such repairs or rebuilding and Tenant shall have a reasonable time thereafter to move out of the Premises.

22.    Insurance.

a.    Landlord shall maintain special form causes of loss property insurance coverage on the Premises, such insurance to be in an amount not less than the full replacement cost of the Premises, and shall include such rent loss coverage and other customary coverages as Landlord may elect in its reasonable discretion, all consistent with the types and amounts of coverage and deductibles as are customary, prudent and commercially reasonable with respect to buildings of the same size, use, class and location as the Building. Landlord shall not maintain earthquake coverage on the Building unless consented to in writing by Tenant. The deductible for such policy maintained by Landlord under this Section 22(a) shall not be less than $5,000.00, nor greater that $25,000.00 without the prior approval of Tenant. All payments for losses thereunder shall be made solely to Landlord or its Lender. Tenant shall maintain at its expense property insurance coverage at full replacement cost on all its personal property, including removable trade fixtures located in the Building and on all additions and improvements (including fixtures) made by Tenant, at Tenant's expense, less a deductible in an amount to be reasonably determined by Tenant. Tenant's coverage may be as part of a "blanket" policy of insurance maintained by Tenant.

b.    Landlord and Tenant shall each maintain a policy or policies of commercial general liability insurance. Such insurance shall insure contractual indemnification obligations under this Lease and shall afford minimum protection (which may be affected by primary and/or excess coverage) of not less than $3,000,000 per occurrence for injury to or death of any person and of not less than $500,000 per occurrence for property damage, with all such policies naming Landlord and Tenant as insured or additional insured. Each party shall provide evidence of such coverage to the other party upon request, and all such coverage must be reasonably acceptable to both parties in all respects.

c.    If Tenant shall fail to procure and maintain the insurance required herein and such failure continues for a period of ten (10) days following written notice thereof from Landlord to Tenant, Landlord may, but shall not be required to, procure and maintain the same, but at the expense of Tenant, which Tenant shall pay to Landlord upon demand. Unless otherwise permitted by Landlord, Tenant's insurance required hereunder shall be in companies rated A-, Class X or better in Best's Insurance Guide. Tenant shall deliver to Landlord prior to occupancy of the Premises certified copies of policies of the Tenant's required insurance or certificates evidencing the existence and amounts of such insurance with loss payable and additional insured clauses satisfactory to Landlord. Tenant shall deliver to Landlord renewals of such policies or certificates evidencing renewal at least thirty (30) days prior to expiration. All certificates shall reflect that no required policy shall be cancelable or subject to reduction of coverage except after thirty (30) days prior written notice to Landlord.

d.    The cost of premiums for all of Landlord's insurance required or permitted to be carried under this Section 22 shall be referred to herein as "**Insurance Costs**". Anything in this Lease to the contrary notwithstanding, Landlord and Tenant each hereby waives any and all rights of recovery, claims, actions or causes of action, against the other, its respective agents,

15

servants, partners, members, shareholders, officers or employees, for personal injury, loss or damage to business, and loss or damage that may occur to the Premises or any personal property located thereon arising from any cause that (a) would be insured against under the terms of any insurance required to be carried hereunder; or (b) is insured against under the terms of any insurance actually carried, regardless of whether the same is required hereunder. The foregoing waiver shall apply regardless of the cause or origin of such claim, including but not limited to the negligence of a party, or such party's agents, officers, employees or contractors. The foregoing waiver shall not apply if it would have the effect, but only to the extent of such effect, of invalidating any insurance coverage of Landlord or Tenant. Each party shall obtain any special endorsements, if any, required by their respective insurers to evidence compliance with the aforementioned waiver.

23.  Damages from Certain Causes.

Landlord shall not be liable or responsible to Tenant for any loss, delay, or damage to any property or person occasioned by theft, fire, acts of God, public enemy, riot, strike, insurrection, war, act or omission of any occupant of the Premises, any nuisance or interference caused or created by any occupant of the Premises, requisition or order of governmental body or authority, court order or injunction, or any other cause beyond Landlord's reasonable control ("Force Majeure").

24.  Hold Harmless.

a.    Landlord shall not be liable to Tenant, its agents, servants, employees, contractors, customers or invitees for any damage to person or property caused by any act, omission or neglect of Tenant.

b.    Without limiting or being limited by any other indemnity in this Lease, but rather in confirmation and furtherance thereof, except to the extent caused by the gross negligence or willful misconduct of Landlord, or the breach of this Lease by Landlord, Tenant agrees to indemnify, defend by counsel reasonably acceptable to Landlord and hold Landlord harmless of, from and against any and all losses, damages, liabilities, claims, liens, costs and expenses (including, but not limited to, court costs, reasonable attorneys' fees and litigation expenses) in connection with injury to or death of any person or damage to or theft, loss or loss of use of any property occurring in or about the Premises arising in connection with Tenant's occupancy of the Premises, or the conduct of its business, or in connection with any activity, work, or thing done, permitted or suffered by Tenant in or about the Premises, or in connection with any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Lease, or due to any other act or omission or willful misconduct of Tenant or any of its agents, employees, contractors, assigns, subtenants, guests or invitees on or in connection with the Premises.

25.  Default and Remedies.

a.    The occurrence of any of the following shall constitute a default under and each of this Lease by Tenant (an "Event of Default"):

16

(i)   Failure by Tenant to pay any Base Rent, Additional Rent, or other monetary sums due under the Lease within five (5) days after written notice from Landlord that such amount is past due;

(ii)  Failure by Tenant to observe or perform any of the provisions in Section 32 in respect of assignment and subletting if such assignment or subletting by Tenant would violate applicable law; or failure by Tenant to observe or perform any of the provisions of Section 22 in respect of required insurance coverages for a period longer than two (2) consecutive business days after written notice from Landlord;

(iii) Failure by Tenant to cure within ten (10) days after written notice of any hazardous condition which Tenant has created in violation of law or of this Lease, provided that such ten (10) day period shall be extended for the time reasonably required to complete such cure, if such failure cannot reasonably be cured within said ten (10) day period and Tenant commences to cure such failure within said ten (10) day period and thereafter diligently and continuously proceeds to cure such failure;

(iv)  Failure by Tenant to complete, execute and deliver any estoppel or non-disturbance agreement required to be completed, executed and delivered by Tenant within ten (10) business days after the initial written demand therefore to Tenant, if such failure continues for seven (7) days following a second written notice thereof from Landlord to Tenant;

(v)   Failure by Tenant to observe or perform any other covenant, agreement, condition or provision of this Lease, if such failure shall continue for thirty (30) days after written notice thereof from Landlord to Tenant; provided that such thirty (30) day period shall be extended for the time reasonably required to complete such cure, if such failure cannot reasonably be cured within said thirty (30) day period and Tenant commences to cure such failure within said thirty (30) day period and thereafter diligently and continuously proceeds to cure such failure;

(vi)  The levy upon, execution upon, or the attachment by legal process of the leasehold interest of Tenant, or the filing or creation of a lien in respect of such leasehold interest (except for a consensual lien granted by Tenant in connection with a leasehold deed of trust or mortgage), which levy, execution, attachment or lien shall not be released or discharged within sixty (60) days from the date of its filing;

(vii) Tenant becomes insolvent or bankrupt or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors, or applies for or consents to the appointment of a trustee or receiver for all or a major part of its property;

17

(viii)   A trustee or receiver is appointed for Tenant or for a major part of Tenant's property and is not discharged within ninety (90) days after such appointment;

(ix)   Any bankruptcy, reorganization, arrangement, insolvency or liquidation proceeding, or other proceeding for relief under any bankruptcy law or similar law for the relief of debtors, is instituted (A) by Tenant, or (B) against Tenant, or is allowed against it, or is consented to by it, or is not dismissed within ninety (90) days after such institution;

b.   Upon the occurrence of an Event of Default, and except as otherwise provided herein, Landlord shall have the option to do and perform any one or more of the following in addition to, and not in limitation of, any other remedy or right permitted it by law or in equity or by this Lease:

(i)   Terminate this Lease and declare the Lease Term hereof ended and re-enter the Premises and take possession thereof and remove all persons and property therefrom, and Tenant shall have no further claim thereon or hereunder.  In such event, Landlord shall be entitled to recover from Tenant all amounts which Landlord is entitled to recover pursuant to Section 1951.2 of the California Civil Code (or any successor thereto);

(ii)   Without declaring a termination of this Lease, or the Lease Term hereof ended, re-enter the Premises and occupy the whole or any part thereof for and on account of Tenant and collect any unpaid rentals and other charges, which have become payable, or which may thereafter become payable.  In such event, Landlord shall be entitled to Landlord's remedies under Section 1951.4 of the California Civil Code (or any successor thereto), i.e., Landlord may continue the Lease in effect after Tenant's breach and abandonment and recover rent as it becomes due, if Tenant has right to sublet or assign, subject only to reasonable limitations;

(iii)   Even though Landlord may have re-entered the Premises, thereafter elect to terminate this Lease and all of the rights of Tenant in or to the Premises; or

(iv)   Pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the state wherein the Premises are located.

c.   If Landlord elects to terminate this Lease pursuant to the provisions of ons (i) or (iii) above, Landlord may recover from Tenant as damages, the following:

(i)   The worth at the time of the award of any unpaid rent and other charges which had been earned at the time of termination; plus

(ii)   The worth at the time of the award by which the unpaid rent and other charges which would have been earned after termination until the time of

18

42

the award exceeds the amount of the loss of such rental and other charges that Tenant proves could have been reasonably avoided; plus

(iii)  The worth at the time of the award of the amount by which the unpaid rent and other charges for the balance of the Lease Term after the time of the award exceeds the amount of the loss of such rental and other charges that Tenant proves could have been reasonably avoided; plus

(iv)  Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom including, but not limited to, any costs or expenses incurred by Landlord in (a) retaking possession of the Premises, including reasonable attorneys' fees thereof; (b) maintaining or preserving the Premises after such default (as to the unexpired portion of the Term); (c) preparing the Premises for reletting to a new Tenant, including repairs or alterations to the Premises for such reletting; (d) leasing commissions (as to the unexpired portion of the Term), free rent and rental concessions made to the new lessee; or (e) any other costs necessary or appropriate to relet the Premises; plus

(v)  At Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable Law.

d.  For the purposes of the preceding section, all rental and charges other than Base Rent shall be computed on the basis of the average monthly amount thereof accruing during the twelve (12) month period immediately preceding notice to Tenant of Tenant's default unless the twelve (12) month period of this Lease has not elapsed, in which case the average monthly amount shall be based upon the entire period of Tenant's occupancy of the Premises.

e.  As used in sections c(i) and c(ii) above, the "worth at the time of the award" shall be computed by allowing interest at the rate of ten percent (10%) per annum. As used in section c(iii) above, the "worth at the time of the award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award, plus one percent (1%)

f.  Notwithstanding any provision contained in this Lease to the contrary, (i) Tenant shall be entitled to vacate the Premises for all or part of the Lease term and same shall not constitute an Event of Default by Tenant, so long as Tenant continues to pay Rent and fulfill its obligations under this Lease; (ii) Landlord shall use good faith, commercially reasonable efforts to mitigate Landlord's damages, and (iii) neither Landlord nor Tenant will be liable for any consequential, speculative or punitive damages

g.  Notwithstanding the foregoing, Tenant shall have the right to cure any Event of Default until such time as Landlord shall begin to exercise any of its rights and remedies under this Section 25 with respect to such Event of Default. In the event Tenant cures any Event of Default before Landlord begins to exercise its right and remedies, with respect to

19

such Event of Default, then Landlord shall not exercise any of the right and remedies provided hereunder with respect to the cured Event of Default, except to the extent of damages actually caused to Landlord as a result of such Event of Default.

26.    Late Payments.

In the event any installment of any Rent owed by Tenant hereunder is not paid within ten (10) days of its due date, Tenant shall pay a late charge equal to three percent (3%) of the amount due. The parties agree that such charge is a fair and reasonable estimate of Landlord's administrative expense incurred on account of late payment. In addition, the amounts due shall bear interest in arrears at the lower of ten percent (10%) per annum or the maximum lawful rate from the date of such notice until the date paid. Should Tenant make a partial payment of past due amounts, the amount of such partial payment shall be applied first to reduce all accrued and unpaid late charges and interest, in inverse order of their maturity, and then to reduce all other past due amounts, in inverse order of their maturity.

27.    Attorneys' Fees.

Should either party initiate any action to enforce its rights under this Lease, the prevailing party shall be entitled to collect from the non-prevailing party, all court costs, reasonable attorneys' fees, litigation expenses, and other costs which such prevailing party incurs in connection with such action.

28.    No Waiver of Rights.

No failure or delay of Landlord or Tenant to exercise any right or power given it herein or to insist upon strict compliance by Landlord or Tenant of any obligation imposed on it herein and no custom or practice of either party hereto at variance with any term hereof shall constitute a waiver or a modification of the terms hereof by Landlord or Tenant of any right it has herein to demand strict compliance with the terms hereof by Landlord or Tenant. No waiver of any right of Landlord or Tenant or any default by Landlord or Tenant on one occasion shall operate as a waiver of any of Landlord's or Tenant's other rights or of any subsequent default by Landlord or Tenant. No express waiver shall affect any condition, covenant, rule, or regulation other than the one specified in such waiver and then only for the time and in the manner specified in such waiver. No person has or shall have any authority to waive any provision of this Lease unless such waiver is expressly made in writing and signed by an authorized officer of Landlord or Tenant, as applicable.

29.    Holding Over.

In the event of holding over by Tenant after expiration or termination of this Lease without the written consent of Landlord, Tenant shall pay as rent for such holdover period one hundred fifty percent (150%) of the Base Rent that would have been payable if this Lease had not so terminated or expired together with one hundred percent (100%) of all Additional Rent for such period. No holding over by Tenant after the term of this Lease shall be construed to extend this Lease.

30.    Subordination.

20

a.   Subject to (and conditioned upon) Landlord's delivery of an SNDA or NDA (hereinafter defined) to Tenant with respect to any Mortgage (hereinafter defined), this Lease and all rights of Tenant hereunder shall be subject to and subordinate at all times to any deed of trust or mortgage (a "Mortgage") now or hereafter existing on the Premises, and to all amendments, modifications, renewals, extensions, consolidations and replacements thereof, and to all advances made or hereafter to be made upon the security thereof. Within ten (10) business days after Landlord's written request, Tenant shall execute, acknowledge and deliver upon request any and all commercially reasonable documents or instruments requested by Landlord or necessary or proper to assure such subordination of this Lease to any Mortgage, provided that such documents or instruments provide that the holder of such Mortgage (a "Mortgagee") shall not disturb Tenant's right to quiet possession of the Premises or its rights under this Lease so long as no Event of Default is continuing (collectively, an "SNDA"). Notwithstanding anything to the contrary contained herein, any Mortgagee may subordinate, in whole or in part, its Mortgage to this Lease without joinder of Tenant by sending Tenant notice in writing.

b.   Tenant agrees that if Landlord defaults in the performance or observance of any covenant or condition of this Lease required to be performed or observed by Landlord hereunder, Tenant will give written notice specifying such default to Landlord and to any Mortgagee of which Tenant has been notified in writing, and before Tenant exercises any right to terminate this Lease on account of any such default of Landlord, any Mortgagee shall have an additional thirty (30) days to cure such default beyond the periods of time set forth in this Lease for Landlord to cure such default.

c.   Notwithstanding any provision contained herein to the contrary, within sixty (60) days after the Effective Date (subject to delays caused by the Mortgagee), Landlord shall deliver to Tenant either an SNDA or a non-disturbance agreement in a form reasonably acceptable to Tenant from any current Mortgagee wherein such Mortgagee shall agree that in the event of a default by Landlord or a foreclosure or other action taken by such Mortgagee, this Lease and the rights of Tenant hereunder shall not be disturbed but shall continue in full force and effect so long as no uncured Event of Default exists ("NDA").

31.   Estoppel Certificate.

a.   Tenant agrees that within ten (10) business days after written request by Landlord or any existing or prospective Mortgagee, Tenant will complete, execute and deliver a written estoppel certificate certifying (a) that this Lease is unmodified and is in full force and effect (or if there have been modifications, that this Lease, as modified, is in full force and effect and attaching the Lease and the modifications); (b) the amounts of the monthly installments of Base Rent, Additional Rent and other sums then required to be paid under this Lease by Tenant; the date to which the Base Rent, Additional Rent and other sums required to be paid under this Lease by Tenant have been paid; (d) a representation that neither Landlord or Tenant is in default under any of the provisions of this Lease, or if in default, the nature thereof in detail and that is required to cure same; and (e) such other information concerning the status of this Lease the parties performance hereunder reasonably requested by Landlord or the party to whom such estoppel certificate is to be addressed.

21

b.      Landlord agrees that, from time to time (but not more than two (2) times per calendar year) upon request by Tenant, Landlord will complete, execute and deliver a written estoppel certificate certifying (a) that this Lease is unmodified and is in full force and effect (or if there have been modifications, that this Lease, as modified, is in full force and effect and attaching the Lease and the modifications); (b) the amounts of the monthly installments of Base Rent, Additional Rent and other sums then required to be paid under this Lease by Tenant; (c) the date to which the Base Rent, Additional Rent and other sums required to be paid under this Lease by Tenant have been paid; (d) a representation that neither Landlord or Tenant is in default under any of the provisions of this Lease, or if in default, the nature thereof in detail and what is required to cure same; and (e) such other information concerning the status of this Lease or the parties performance hereunder reasonably requested by Landlord or the party to whom such estoppel certificate is to be addressed.

32.     Sublease or Assignment by Tenant.

a.      Except in connection with a Permitted Transfer, Tenant shall not, without the Landlord's prior written consent, not to be unreasonably withheld, conditioned, or delayed, (i) assign, convey, mortgage, pledge, encumber, or otherwise transfer (whether voluntarily, by operation of law, or otherwise) any of its rights in, to, or under this Lease; or (ii) allow any lien to be placed upon Tenant's interest hereunder (except for a consensual lien granted by Tenant in connection with a leasehold deed of trust or mortgage) (each, a "**Transfer**"). Except in connection with a Permitted Transfer, any Transfer without Landlord's prior written consent shall be void and of no force or effect.

b.      With respect to any proposed Transfer, but subject to Tenant's right to complete a Permitted Transfer without Landlord approval, Tenant shall submit to Landlord a copy of the proposed assignment or other documents evidencing such Transfer, and such additional information concerning the business, reputation and creditworthiness of the proposed assignee as shall be sufficient to allow Landlord to form a commercially reasonable judgment with respect thereto. After an Event of Default, Landlord may require that any rent or other sums paid by a sublessee or assignee be paid directly to Landlord.

c.      Notwithstanding the giving by Landlord of its consent to any Transfer as provided hereunder or any language contained in any lease, sublease or assignment to the contrary, unless this Lease is expressly terminated by Landlord in writing or Tenant is expressly released from liability by Landlord by written release, Tenant shall not be relieved of any of Tenant's obligations or covenants under this Lease as a result of any Transfer, and Tenant shall remain fully liable hereunder.

d.      Notwithstanding any provision contained herein to the contrary, Tenant shall have the right to (i) mortgage or otherwise collaterally assign all or any part of its leasehold interest hereunder as security for a loan, or (ii) assign its entire interest under this Lease or sublet the entire Premises (x) to any entity controlling or controlled by or under common control with Tenant, or (y) to any successor to Tenant by purchase, merger, consolidation or reorganization, or (z) to any entity purchasing all or substantially all of the assets of Tenant (each, a "**Permitted Transfer**"). In connection with such mortgage or collateral assignment, Landlord will cooperate with reasonable requests of Tenant or Tenant's lender for Landlord to execute additional

22

documents in order for Tenant and Tenant's lender to obtain policies of leasehold title insurance, including, without limitation, owner's affidavits and general corporate documentation. In addition, the sale or transfer of ownership interests in the Tenant shall not be considered a "Transfer".

e.      Notwithstanding any language herein to the contrary, any Transfer, including any Permitted Transfer, must be made in compliance with applicable laws, and any transferee must assume the obligations of Tenant hereunder for the benefit of Landlord. Unless expressly released from further obligation under this Lease by Landlord by written instrument, Tenant shall continue to be primarily liable for all obligations of Tenant hereunder after a Transfer.

33.    Quiet Enjoyment.

Landlord covenants that Tenant shall peacefully have, hold and enjoy the Premises free from hindrance by Landlord or any person claiming by, through or under Landlord but subject to the other terms hereof, provided that Tenant pays the Rent and other sums herein required to be paid by Tenant and performs all of Tenant's covenants and agreements herein contained. It is understood and agreed that this covenant and any and all other covenants of Landlord contained in this Lease shall be binding upon Landlord only with respect to breaches occurring during its ownership of the Landlord's interest hereunder.

34.    Assignment by Landlord.

Landlord shall have the right to transfer and assign, in whole or in part, all its rights and obligations hereunder, or in the Premises. In such event and upon such transfer and assumption by such transferee of all of Landlord's future obligations under this Lease, no further liability or obligation shall thereafter accrue against Landlord hereunder, provided that such assignment shall not relieve Landlord of any obligations through the date of such transfer and further provided that the new Landlord shall assume all future obligations as set forth herein.

35.    Landlord's Default; Limitation of Personal Liability.

It shall be an Event of Default by Landlord if Landlord fails to comply with any provision this Lease and the failure continues for thirty (30) days after written notice from Tenant to Landlord (with a copy to Landlord's mortgagees if Tenant has been notified in writing of the entities and addresses of such mortgagees); provided, however, if any failure by Landlord to comply with this Lease cannot be corrected within such 30-day period solely as a result of non-financial circumstances outside of the control of Landlord, and if substantial corrective actions have commenced within such 30-day period and are being diligently pursued, such 30-day period shall be extended for such additional time as is reasonably necessary to allow completion of actions to correct Landlord's noncompliance. Except as specifically provided otherwise in this Lease, in the Event of Default by Landlord, then Tenant shall be entitled to any remedies available at law or in equity. Notwithstanding anything contained in this Lease to the contrary, it is expressly understood and agreed that any judgment against Landlord resulting from any default or other claim under this Lease shall be satisfied only out of Landlord's equity interest in the Premises and all rents, profits and proceeds thereof, it being agreed that Landlord

23

and the partners, members and shareholders of Landlord shall never be personally liable for any such judgment. In no event shall Landlord be liable to Tenant for consequential, speculative or punitive damages.

### 36.   Force Majeure.

Landlord and Tenant (except with respect to the payment of Rent or any other monetary obligation under this Lease) shall be excused for the period of any delay and shall not be deemed in default with respect to the performance of any of the terms, covenants and conditions of this Lease when prevented from so doing by a cause or causes beyond the Landlord's or Tenant's (as the case may be) reasonable control (excluding financial inability to perform), which shall include all matters included in the definition of Force Majeure in Section 23 above.

### 37.   Surrender of Premises.

Upon the termination of this Lease by lapse of time or otherwise or upon the earlier termination of Tenant's right of possession, Tenant shall quit and surrender possession of the Premises to Landlord broom clean and in substantially the same condition as it existed on the Commencement Date (but as altered or improved after such date in compliance with the requirements of this Lease), excepting only normal wear and tear, damage by casualty or condemnation, and construction, maintenance, repairs, and replacements required hereunder to be completed by Landlord. Before surrendering possession of the Premises, Tenant shall, without expense to Landlord, remove all signs, furnishings, equipment, trade fixtures, merchandise and other personal property installed or placed in the Premises by Tenant and all debris and rubbish, and Tenant shall repair all damage to Premises resulting from such removal (as opposed to normal wear and tear). If Tenant fails to remove any of the signs, furnishings, equipment, trade fixtures, merchandise and other personal property installed or placed in the Premises by the expiration or termination of this Lease and such failure continues for ten (10) days following written notice thereof from Landlord to Tenant, then Landlord may, at its sole option, (a) deem any or all of such items abandoned and the sole property of Landlord after thirty (30) days; or (b) remove any and all such items and dispose of same in any manner. Tenant shall pay Landlord. on demand any and all expenses incurred by Landlord in the removal of such items, including, without limitation, the cost of repairing any damage to the Premises caused by such removal and storage charges (if Landlord elects to store such property), together with an administrative fee equal to five percent (5%) of such aggregate costs.

### 38.   Notices.

Any notice or other communications required or permitted to be given under this Lease must be in writing and shall be effectively given or delivered if (a) hand delivered to the addresses for Landlord and Tenant stated below, (b) sent by certified United States Mail, return receipt requested, to said addresses, or (c) sent by nationally recognized overnight courier (such as Federal Express, UPS Next Day Air or Airborne Express), with all delivery charges paid by the sender and signature required for delivery, to said address. Any notice mailed shall be deemed to have been given upon receipt or rejection by the intended recipient. Any party shall have the right to change its address to which notices shall thereafter be sent and the party to

24

whose attention such notice shall be directed by giving the other party notice thereof in accordance with the provisions of this Section.

Landlord:
Littrell Properties, LP
13639 Rostrata Rd.
Poway, CA 92064

With a copy to:
Procopio, Cory Hargreaves & Savitch
525 B Street, Suite 2200
San Diego, CA 92101
Attn:  Ed Walton

Tenant:

HealthStream, Inc.
209 10th Avenue South - Suite 450
Nashville, TN  37203
Attn: Legal Department

With a copy to:
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Attn.: D. Mark Sheets

39.    Trade Fixtures.

At the expiration of the Term, Tenant shall have the right to remove any trade fixtures installed by Tenant on the Premises, and shall repair any damage to the Premises caused during such removal, normal wear and tear, casualty and condemnation excepted.

40.    Waiver of Security Interest.

Landlord hereby waives any and all security interests, liens, and other rights and interests, whether granted by statute or otherwise, in and to any and all fixtures, furniture, equipment and other personal property of Tenant.

41.    Miscellaneous.

a.    This Lease shall be binding upon and inure to the benefit of the successors and assigns of Landlord, and shall be binding upon and inure to the benefit of Tenant, its successors, and, to the extent assignment is specifically permitted by the terms hereof or as may be approved by Landlord hereunder, Tenant's assigns.

25

b.      All rights and remedies of Landlord and Tenant under this Lease shall be cumulative and none shall exclude any other rights or remedies allowed by law. This Lease shall be construed according to the laws of the State of California.

c.      This Lease may not be altered, changed or amended, except by an instrument in writing executed by all parties hereto. No provision of this Lease shall be deemed waived by Landlord or Tenant except by a signed written waiver.

d.      If Tenant is a corporation, partnership, limited liability company or other entity, Tenant warrants that all consents or approvals required of third parties (including but not limited to its Board of Directors, partners or members) for the execution, delivery and performance of this Lease have been obtained and that Tenant has the right and authority to enter into and perform its covenants contained in this Lease. If Landlord is a corporation, partnership, limited liability company or other entity, Landlord warrants that all consents or approvals required of third parties (including but not limited to its Board of Directors, partners or members) for the execution, delivery and performance of this Lease have been obtained and that Landlord has the right and authority to enter into and perform its covenants contained in this Lease.

e.      **TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO SHALL AND THEY HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE PREMISES AND/OR ANY CLAIM OF INJURY OR DAMAGE.**

f.      If any term or provision of this Lease, or the application thereof to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and shall be enforceable to the extent permitted by law.

g.      Time is of the essence in this Lease.

h.      Landlord and Tenant each represents and warrants to the other that it did not deal with any broker in connection with this Lease. Tenant and Landlord each shall indemnify, defend and hold the other harmless of, from and against any and all losses, damages, liabilities, claims, liens, costs and expenses (including, without limitation, court costs, reasonable attorneys' fees and litigation expenses) arising from any claims or demands of any other broker or brokers or finders for any commission alleged to be due such other broker or brokers or finders claiming to have represented or otherwise dealt with the indemnifying party in connection with this Lease.

i.      Landlord's receipt of any payment of Rent by Tenant hereunder with knowledge of the breach of a covenant or agreement contained in this Lease shall not be deemed a waiver of the breach. No acceptance by Landlord of a lesser amount than the installment of Rent which is due shall be considered, nor shall any endorsement or statement on any check or

26

any letter accompanying any check or payment be deemed, an accord and satisfaction. Landlord may accept a check or payment without prejudice to Landlord's right to recover the balance due or to pursue any other remedy provided in this Lease.

j.      Submission of this instrument for examination shall not constitute a reservation of or option to lease the Premises or in any manner bind Landlord, and no lease or obligation on Landlord shall arise until this instrument is signed and delivered by Landlord and Tenant.

k.      Any claim, cause of action, liability or obligation arising under the term of this Lease and under the provisions hereof in favor of a party hereto against or obligating the other party hereto and all of Landlord and Tenant's indemnification obligations hereunder shall survive the expiration or any earlier termination of this Lease.

l.      Tenant and Landlord agree not to record this Lease. At Tenant's request, Landlord and Tenant shall execute and record a memorandum of this Lease in a customary form approved by Landlord and Tenant.

42.     Conditions Precedent. This Lease shall not become effective until (a) it is signed by both Landlord and Tenant, and (b) the "Termination of Prior Lease" set forth below is signed by Landlord and Prior Tenant.

*[remainder of page intentionally left blank]*

27

IN WITNESS WHEREOF, the parties hereto have executed and sealed this Lease as of the date aforesaid.

LANDLORD:

LITTRELL PROPERTIES, LP,
a California limited partnership

By: 
Name:   Tim Littrell
Its:

TENANT:

HEALTHSTREAM, INC.,
a Tennessee corporation

By: _____
Name:   Robert A. Frist, Jr.
Its:        Chief Executive Officer

IN WITNESS WHEREOF, the parties hereto have executed and sealed this Lease as of the date aforesaid.

LANDLORD:

LITTRELL PROPERTIES, LP,
a California limited partnership

By: _____
Name:   Tim Littrell
Its:

TENANT:

HEALTHSTREAM, INC.,
a Tennessee corporation

By: _____*Robert A. Frist, Jr.*_____
Name:   Robert A. Frist, Jr.
Its:       Chief Executive Officer

53

## TERMINATION OF PRIOR LEASE

The undersigned, as landlord ("Landlord") and tenant ("Prior Tenant"), respectively, under that certain Lease dated August 1, 2008 (the "Prior Lease"), relating to the Premises that are the subject of the above Lease, hereby agree that the Prior Lease is hereby terminated effective as of the Commencement Date set forth in the above Lease.

Dated:          March 16          , 2015

LANDLORD:                    LITTRELL PROPERTIES, LP.
                             a California limited partnership

                             By:    _____
                             Name:  Tim Littrell
                             Its:

PRIOR TENANT:                HEALTHLINE SYSTEMS, INC.,
                             a California corporation

                             By:    _____
                             Name:  Dan E. Littrell
                             Its:   Chief Executive Officer

54



## TERMINATION OF PRIOR LEASE

The undersigned, as landlord ("Landlord") and tenant ("Prior Tenant"), respectively, under that certain Lease dated August 1, 2008 (the "Prior Lease"), relating to the Premises that are the subject of the above Lease, hereby agree that the Prior Lease is hereby terminated effective as of the Commencement Date set forth in the above Lease.

Dated: _____ **March 16** __, 2015

LANDLORD:                    LITTRELL PROPERTIES, LP,
                             a California limited partnership

                             By: _____
                             Name:   Tim Littrell
                             Its:

PRIOR TENANT:                HEALTHLINE SYSTEMS, INC.,
                             a California corporation

                             By: _____
                             Name:   Dan E. Littrell
                             Its:    Chief Executive Officer

55

## SCHEDULE OF EXHIBITS

Exhibit A     Legal Description of the Site
Exhibit B     Site Plan

## EXHIBIT A: LEGAL DESCRIPTION OF THE SITE

PARCEL A:

PARCEL 2 OF PARCEL MAP NO. 17974, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON DECEMBER 31, 1997.

RESERVING THEREFROM A NON-EXCLUSIVE EASEMENT OVER, UNDER, ALONG AND ACROSS PARCELS 2 AND 3 OF PARCEL MAP NO. 17974, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON DECEMBER 31, 1997, DESCRIBED IN THAT CERTAIN "CROSS PARKING, INGRESS AND ROAD MAINTENANCE AGREEMENT" RECORDED MARCH 16, 1998 AS FILE NO. 1998-0139543 OFFICIAL RECORDS FOR THE PURPOSES AS STATED IN SAID DOCUMENT, SUBJECT TO THE COVENANTS AND CONDITIONS CONTAINED THEREIN.

PARCEL B:

A NON-EXCLUSIVE EASEMENT OVER, UNDER, ALONG AND ACROSS PARCELS 1 AND 4 OF PARCEL MAP NO. 17974, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON DECEMBER 31, 1997, DESCRIBED IN THAT CERTAIN "CROSS PARKING, INGRESS AND ROAD MAINTENANCE AGREEMENT" RECORDED MARCH 16, 1998 AS FILE NO. 1998-0139543, OFFICIAL RECORDS FOR THE PURPOSES AS STATED IN SAID DOCUMENT, SUBJECT TO THE COVENANTS AND CONDITIONS CONTAINED THEREIN.

A-1

## EXHIBIT B:  SITE PLAN OF THE PREMISES



DOCS 111652-000013/2170282.2

B-1

SITE PLAN

59